IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LENARD OWENS,<br><br>          Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | CASE NO. 4:23-cv-1288<br><br>DISTRICT JUDGE<br>PATRICIA A. GAUGHAN<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT & RECOMMENDATION** |

Plaintiff Lenard Owens filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying Supplemental Security Income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. For the reasons stated below, I recommend that the District Court grant the Commissioner's Motion and remand this case to give Owens an opportunity to have a new hearing and the Administrative Law Judge to issue a new decision.

*Procedural history*

In December 2020, Owens protectively filed an application for Supplemental Security Income alleging a disability onset date of January 1,

2016,[1] and claiming he was disabled due to gunshot wounds to his leg, arm, back, and stomach; a torn and pulled ACL in his knee; stents in his liver; post-traumatic stress disorder; and depression. Tr. 20, 258, 284. The Social Security Administration denied Owens's application and his motion for reconsideration. Tr. 65, 75. Owens then requested a hearing before an Administrative Law Judge (ALJ). Tr. 101.

In August 2022, an ALJ held a hearing. Owens and a vocational expert testified. Tr. 40–64. The next month, the ALJ issued a written decision finding that Owens was not disabled. Tr. 20–33. The ALJ's decision became final on May 5, 2023, when the Social Security Appeals Council declined further review. Tr. 1-3; *see* 20 C.F.R. § 404.981.

Owens filed this action on June 29, 2023. Doc. 1. He asserts the following assignments of error:

> 1. Did the ALJ err when she failed to appropriately consider the cross-examination by counsel of the vocational expert that resulted in a finding of disability?
>
> 2. Did the ALJ err by not finding Plaintiff's treating provider, Ms. Miller's opinion as persuasive?
>
> 3. Did the ALJ err by finding the State Agency Psychological Consultants' opinions persuasive?

Doc. 8, at 1.

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

After Owens filed his brief on the merits, the Commissioner filed a Motion to remand. Doc. 10. The Commissioner explains that the parties agree that this case should be returned to the Social Security Administration but disagree as to the remedy. *Id.* The Commissioner asks that the case be remanded to give Owens an opportunity for a new hearing and the ALJ to issue a new decision. *Id.* Owens asks that the Court reverse the ALJ's decision and order the Commissioner to award Owen disability benefits. Doc. 11.

*The ALJ's decision*

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant has not engaged in substantial gainful activity since December 16, 2020, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: Residual effects of gunshot wounds and surgical repairs; internal derangement of the left knee; and attention deficit hyperactivity, post-traumatic stress, and depressive disorders, with disruptive mood dysregulation (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or a combination of impairments that meets or medically equals the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. The claimant has the residual functional capacity[2] to perform light work as defined in 20 CFR

---

[2] A residual functional capacity (RFC) is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

> 416.967(b), with the following limitations: The claimant can never climb ladders, ropes, or scaffolds, and he can no more than occasionally climb ramps/stairs, kneel, crouch, and crawl. He can perform simple, routine, and repetitive tasks at a nonproduction rate pace, he can occasionally interact with supervisors, coworkers, and the general public, and he can tolerate few changes in a routine work setting.
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> 6. The claimant was born [i]n … 1996. Therefore, he was 24 years old and defined as a younger individual on the date the application was filed (20 CFR 416.963).
>
> 7. The claimant has a high school education (20 CFR 416.964).
>
> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since December 16, 2020, the date the application was filed (20 CFR 416.920(g)).

Tr. 22–33.

*Legal Standard*

When a court determines that the ALJ's decision is not supported by substantial evidence, it has two options. The usual course is to vacate the ALJ's

4

decision and remand the case to the Commissioner to re-evaluate the plaintiff's application for benefits. The rarer course is to reverse the Commissioner's decision and award disability benefits. This latter course is warranted "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also* 42 U.S.C. § 405(g). An award of benefits "is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934–35 (6th Cir. 2018) (quoting *Faucher*, 17 F.3d at 176); *see McClain v. Comm'r of Soc. Sec.*, 114 F. App'x 724, 727 (6th Cir. 2004) (remanding for further findings by the Commissioner "[i]n view of the fact-bound and record-bound nature of the parties' dispute …. The deferential standard of review applicable to these cases generally counsels in favor of hearing from the ALJ first.").

*Analysis*

Owens argues that the ALJ ignored the vocational expert's testimony at the hearing about the amount of social interaction required during a probationary period for unskilled positions. Doc. 8, at 10–12; Doc. 11, at 1–2. As a result, Owens submits, there is "clear evidence" of his disability, Doc. 11 at 1, and the Court should order the Commissioner to award him benefits, Doc. 8, at 10–12; Doc. 11, at 1–2.

5

At the administrative hearing, the ALJ asked the vocational expert to consider whether a hypothetical individual could perform work if the individual was limited, in relevant part, to occasional interaction with supervisors and co-workers. Tr. 59. The vocational expert answered that such an individual could perform three types of unskilled, light exertional-level jobs in the national economy—gluer, garment folder, and inspector and hand packager. Tr. 60. The ALJ asked the vocational expert if her testimony was consistent with the Dictionary of Occupational Titles. Tr. 60. The vocational expert said that her testimony was consistent except for "the interaction with others" limitation. Tr. 60. She explained that the Dictionary of Occupational Titles doesn't address interaction with others, and that her answer as to that limitation was based on her "professional experience and training." Tr. 60.

Next, Owens's counsel questioned the vocational expert. Counsel asked whether in "these unskilled positions, there's usually a probationary period." Tr. 61. The vocational expert agreed that there was and said that the probationary period "usually" lasts "[a]nywhere from 30 to 90 days." Tr. 61. Counsel then asked about absenteeism. Tr. 61–62. Counsel stated, "going back to that probationary period, you would agree that to enter the marketplace of unskilled work, … you would likely need regular and ongoing contact with supervisors in order to be able to learn and be provided enough instruction to learn how to do the job." Tr. 62. The vocational expert agreed. Tr. 62. Counsel asked if a claimant could "perform the job or be able to go through that

6

probationary period" if they were limited to only occasional interaction with supervisors or co-workers for the first 30 to 90 days. Tr. 62. The vocational expert answered "no, they're not going to be able to perform those jobs." Tr. 62–63.

The hearing ended without further substantive questions. In her decision, the ALJ found that Owens could perform the jobs of gluer, garment folder, and inspector and hand packager. Tr. 32. The ALJ said that she relied on the vocational expert's testimony to support this finding. Tr. 33. The ALJ did not mention the vocational expert's testimony about social interaction during a probationary period.

Owens argues that the "ALJ's decision is wrong" because the vocational expert stated that Owens could not perform certain jobs due to the heightened social interaction required in the probationary period. Doc. 8, at 11; Doc. 11, at 1–2. Owens's argument fails because he hasn't cited legal authority showing that the ALJ's decision was "wrong." *See, e.g., Rebecca L. v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 273 (D.N.J. 2022) (noting that courts in that district "routinely" reject arguments that "an interaction level during a probationary training period that briefly exceeds occasional undermines a plaintiff's RFC") (citing *Torres v. Comm'r of Soc. Sec.*, No. 14-cv-6178, 2015 WL 8328346, at *7 (D.N.J. Dec. 8, 2015); *but see Sczepanski v. Saul*, 946 F.3d 152, 158 (2d Cir. 2020) ("the ability to complete a probationary period is relevant to a claimant's

7

ability to perform significant numbers of jobs in the national economy at step five").

Even if the ALJ erred, the appropriate remedy would be a remand for further proceedings so that the ALJ can reconcile any inconsistency in the vocational expert's testimony. *See, e.g., Sczepanski*, 946 F.3d 152, 161–62 (rejecting the claimant's request for an award of benefits when the ALJ's RFC limited the claimant to missing up to one day of work per month and the vocational expert testified that employers would not tolerate that level of absenteeism during a probationary period; "the Commissioner should be given the opportunity to show on remand that there are significant numbers of jobs in the national economy that Sczepanski can perform"); *see also Faucher*, 17 F.3d at 176 (an award of benefits is warranted "only if all essential factual issues have been resolved").

The case *Bernard L. v. Saul*, No. 19-cv-1223, 2020 WL 7027637 (N.D. Ill. Nov. 30, 2020), is instructive. In *Bernard L.*, the court found that the ALJ's reliance on vocational expert testimony was erroneous. *Id.* at *3. The vocational expert had identified three jobs that the claimant—who was limited to occasional interaction with others—could perform. *Id.* at 2. But when later questioned by the claimant's attorney, the vocational expert testified that the three identified jobs were "Specific Vocational Preparation (SVP)[3] Level-2"

---

[3]     The court explained that "SVP refers to 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-

8

jobs, which "'have a training period' of 'up to 30 days.'" *Id.* The vocational expert explained that a claimant who was limited to occasional interaction with others couldn't withstand the 30-day probationary period for *SVP 2* jobs because during that probationary period the claimant would have more than occasional interaction with others. *Id.* at *2–3. And as in Owens's case, "[t]he [vocational expert] did not try to resolve this contradiction during her testimony, and the ALJ's decision ignores this issue entirely." *Id.* at *3.

The *Bernard L.* court discussed numerous cases, *id.* at *3–6, and found that a remand for further proceedings, rather than an award of benefits, was appropriate, *id.* at *6. The court relied on the fact that the vocational expert's testimony wasn't specific to the actual jobs that the vocational expert identified at the hearing. *Id.* at *6–7 (explaining that the vocational expert testified about "SVP 2 positions in general" and not "the length of training periods for the small parts assembler, label coder, and housekeeping cleaner positions"). Here, as in *Bernard L.*, the vocational expert testified generally about unskilled jobs and not the probationary periods for the jobs gluer, garment folder, and inspector and hand packager.[4] Tr. 61–63. In short, there are unresolved factual

---

worker situation.'" *Bernard L.*, 2020 WL 7027637, at *3, n.2 (quoting the Dictionary of Occupational Titles, App'x C, § II).

4      The jobs of gluer, garment folder, and inspector and hand packager are also "SVP 2" jobs. Tr. 32–33.

issues in this case that make an award of benefits by this Court improper.[5] *See Faucher*, 17 F.3d at 176; *see Sczepanski*, 946 F.3d at 161–62; *Bernard L.*, 2020 WL 7027637, at *6; *see also* Soc. Sec. Ruling 00-4P, *Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, 2000 WL 1898704, at *4 (S.S.A. Dec. 4, 2000) ("[w]hen vocational evidence provided by a [vocational expert] … is not consistent with information in the [Dictionary of Occupational Titles], the adjudicator must resolve this conflict before relying on the [vocational expert] … evidence to support a determination or decision that the individual is or is not disabled").

In support of his argument, Owens relies on *Still v. Comm'r of Soc. Sec.*, No. 1:18-cv-837, 2020 WL 1316430 (S.D. Ohio Mar. 20, 2020), *report and recommendation adopted*, 2020 WL 1904781 (S.D. Ohio Apr. 17, 2020), which, Owens claims, "is not too dissimilar from" his case. Doc. 11, at 2. But *Still* is materially "dissimilar" from Owens's case. In *Still*, the district court performed a full record review[6] and found that the ALJ "made several errors" when evaluating the treating psychologist's opinion and the treating neurosurgeon's opinion, including numerous instances of the ALJ ignoring, misconstruing, and

---

[5]  For example, the ALJ could ask the vocational expert further questions, including about the number of available jobs. *See Bernard L.*, 2020 WL 7027637, at *6. The ALJ could "craft an RFC that distinguishes between the job itself and the job's training period." *See id.* at 5. Or the ALJ could find that benefits are warranted.

[6]  Here, the briefing on the merits is not complete because the Commissioner conceded reversible error when he moved to remand this case.

10

mischaracterizing the opinions and medical evidence in the record. 2020 WL 1316430, at *10–11, 13, 15, 17–19. Importantly, the treating physician rule[7] applied—that rule meant that the treating physicians' opinions were entitled to presumptive "controlling weight." *Id.* at *15, 17–18. The court also found that the ALJ erred when evaluating the claimant's impairments at step three. *Id.* at 11. The court explained that the evidence showed that the claimant—contrary to the ALJ's finding—had nerve root compression in his spine, a necessary element of Listing 1.04. *Id.* at *9–11. After considerable discussion of the physical and psychological evidence and opinions detailed in the record, as well as the parties' competing arguments, the court concluded:

> This matter should be remanded for an award of benefits. "[A]ll essential factual issues have been resolved and the record adequately establishes ... plaintiff's entitlement to benefits." *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of H.H.S.*, 820 F.2d 777, 782 (6th Cir. 1987). As discussed above, the evidence of disability is strong and opposing evidence is lacking in substance. The evidence of record strongly supports a finding that plaintiff meets Listing 1.04. In addition, the vocational expert testified that based on Dr. Giessler's assessment of plaintiff's ability to perform work-related activities from a mental standpoint, there are no jobs plaintiff could perform on a sustained basis. (Tr. 81-82, 84). A remand in this matter would merely involve the presentation of cumulative evidence and would serve no useful purpose. *Faucher*, 17 F.3d at 176. Because the record adequately establishes plaintiff's entitlement to

---

[7] The "treating physician rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. §§ 404.1520c and 416.920c for applications filed on or after March 27, 2017, like Owens's.

> benefits and there is no significant evidence to the contrary, this matter should be remanded for an award of benefits. *See Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994); *Faucher*, 17 F.3d at 176.

*Still*, 2020 WL 1316430, at *19.

Owens's case is not the rare instance in which "all essential factual issues have been resolved and the record adequately establishes [Owens's] entitlement to benefits." *See Faucher*, 17 F.3d at 176. Unlike in *Still*, the treating physician rule doesn't apply to this case, so there are no presumptive controlling opinions in the record that would govern the ALJ's RFC assessment and, in turn, the hypothetical questions presented to the vocational expert.[8] *C.f. Earley*, 893 F.3d at 934–35 (an award of benefits "is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking"). Rather, Owens's case is the more usual situation in which there are unresolved factual issues. So the case should be remanded for the ALJ to decide these issues. *See McClain*, 114 F. App'x at 727.

Finally, I note that the only articulated basis for Owens's request for an award of benefits is the error surrounding the vocational expert testimony described above. Doc. 11; *see* Doc. 8, at 10–16. Alternatively, Owens requests

---

[8] Moreover, unlike in *Still*, Owens doesn't allege that the ALJ ignored or misconstrued medical evidence and he hasn't identified an error the ALJ made as to Miller's opinion. Rather, Owens simply argues that there is in the record substantial evidence that supports Miller's opinion, Doc. 8, at 13–14, and that the ALJ didn't sufficiently explain her conclusion when evaluating the state agency reviewers' opinions, *id.* at 15–16.

12

that the Court "remand this case for the ALJ to appropriately consider the vocational expert testimony, Ms. Miller's opinion and the State Agency Psychological Consultants' opinions." Doc. 11, at 2; *see* Doc. 8, at 12–15. Meanwhile, the Commissioner asserts that he agreed to a remand in this case based on the errors that the ALJ made when evaluating the opinion evidence. Doc. 13, at 1. The fact that the parties agree that the ALJ's evaluation of the opinion evidence is faulty is another reason why this case should be remanded for further proceedings, rather than an award of benefits. On remand, the ALJ will have an opportunity to reevaluate the opinion evidence, which may change the RFC assessment and the questions posed to the vocational expert.

*Conclusion*

For the reasons explained above, I recommend that the Court grant the Commissioner's Motion to remand with instructions that an ALJ offer the claimant an opportunity for a new hearing and issue a new decision.

Dated: January 5, 2024

                                         */s/ James E. Grimes Jr.*
                                         James E. Grimes Jr.
                                         U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 53–31 (6th Cir. 2019).